Edwin Dwayne Wasson, et al v. Elmer Warren

5-4743                                    434 S.W. 2d 51

Opinion Delivered November 25, 1968

*Wright, Lindsey & Jennings* for appellants.

*Gordon, Gordon & Eddy* for appellee.

J. FRED JONES, Justice. Appellee Warren sued Greyhound Lines, Inc. and its bus driver, Wasson, in the Conway County Circuit Court for $10,000 personal injury and property damage growing out of a highway collision in Conway County. Greyhound filed a counter-claim but a jury trial resulted in a judgment for Warren in the amount of $10,000. Greyhound and its driver, Wasson, have appealed. They rely on two points for reversal, as follows:

"The jury failed to take into account appellee's contributory negligence.

The Court erred in giving AMI 902 because it is an erroneous statement of the law, it is confusing and it is in conflict with AMI 601."

The facts briefly are these: On July 27, 1967, Warren was driving his automobile in a direct course on Highway 64 in Conway County and appellant's bus was traveling in a direct course in the same direction behind Warren. Appellant's bus driver turned the bus from a direct course to the south, and his left hand side of the highway, in order to pass slower traffic, including Warren's automobile. Warren turned his automobile from its direct course and from the north, to the south side of the highway, in order to cross the south side of the highway and enter a driveway to a grocery store and filling station on the south side of the highway. The right front corner of the bus collided with the left rear portion of appellee's automobile and the appellee was injured.

The jury verdict was for $10,000, the full amount sued for, and appellants contend that the jury obviously did not consider comparative negligence as evidenced by a verdict for the full amount sued for. The thrust of appellants' contention is that we should assess contributory negligence in this case on appeal as a matter of law.

We cannot agree with this contention. The verdict was general in nature and form, and no interrogatories were propounded to the jury as to the comparative negligence of the two drivers. The evidence as to damages is not abstracted and we find no evidence in the record that the jury even knew the amount being sued for. There is no evidence in the record at all, except the verdict itself, that would indicate the jury did not consider contributory negligence in arriving at its verdict of $10,000. The mere fact that a jury verdict, on conflicting evidence, is for all or more than the maximum amount for which judgment may be entered on the pleadings, does not raise a presumption that the jury disregarded its instructions on comparative negligence and failed to consider the evidence relating thereto. The presumption would be, under such circumstances, that the jury did consider contributory negligence and found none.

The question of negligence, as well as contributory negligence, are questions for the jury. *Armour Co.* v. *Rose,* 183 Ark. 413, 36 S.W. 2d 70. It is the province of the jury to pass upon the conflict in, and the weight of, the testimony, and the fact that the testimony is conflicting, and that the verdict may even appear to be contrary to the preponderance of the testimony, furnishes no ground for reversal and a question of contributory negligence properly submitted to a jury is concluded by the jury verdict. *Arkansas Power & Light Co.* v. *Cates,* 180 Ark. 1003, 24 S.W. 2d 846; *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S.W. 2d 255; *Missouri Pacific R. Co.* v. *Henderson,* 194 Ark. 884, 110 S.W. 2d 516.

The appellant bus driver testified that when appellee first drove into the highway, he, the bus driver, had to put on brakes in order to keep from hitting appellee's automobile; that he continued to follow the appellee west on the highway at forty-five or fifty miles per hour; that another automobile got between the bus

and appellee's automobile, and that there was an automobile and a truck ahead of appellee's automobile when he sounded the horn on the bus, deviated from his direct course and started to pass the line of vehicles. He says that when he got about even with the rear window of the appellee's automobile, it deviated from its direct course and started coming to the south side of the highway. He says that he sounded his horn but appellee's automobile kept on coming and continued to crowd the bus from the highway to the point of collision. The bus driver testified that he was watching appellee's automobile for turn signals and that none were given.

The appellee testified that he was driving his automobile in a direct course west in the north traffic lane of the highway and observed, in his rear-view mirror, the appellant's bus following him in a direct course on the north side of the highway. Appellee says that he turned on the left blinker signal of his automobile indicating his intention to turn left from his direct course and into a driveway on the south, and his left side, of the highway. Appellee testified that his blinker signal had been on for a distance of from one hundred feet to one hundred yards when he turned his automobile from its direct course to, and across, the south traffic lane of the highway. Appellee testified that he heard no horn signal from the bus and that when his automobile had almost cleared the south traffic lane of the highway as he drove it into the side road or driveway to the filling station, the appellant's bus struck the left rear of his automobile and injured him.

This case presented to the jury the usual sharp conflict in testimony attending collisions of this kind. Appellant says he sounded his horn, appellee says he heard no horn. Appellee says he turned his blinker signal light on, and appellant says he did not.

Several of the bus passengers testified for the appellants. They had all been on a six thousand mile

sightseeing trip through the northern United States and a part of Canada with the same bus driver. These witnesses were sitting on both sides of the bus and they all testified that they saw appellee's automobile turn left into the path of the bus without giving any signal of intention to turn. As to details of related events both before and after the collision, the testimony of these witnesses was in conflict with each other and with the driver's testimony. They all testified as to their confidence in the driver's proficiency during the two weeks trip, as well as at the time of the collision. One of the witnesses made pictures of the vehicles following the collision and gave them to the bus driver. They all saw the accident and testified that appellee gave no signal, but none of them saw the other automobile that the bus driver said was between the bus and the appellee's automobile.

The police officer who investigated the accident testified that he talked with some of the bus passengers in the front portion of the bus at the time of the collision, and that none of them indicated at that time that they knew anything about how the collision occurred.

The appellants argue, in effect, that we should find contributory negligence *as a matter of law* in this case and reduce the amount of the verdict and judgment commensurate with the comparative negligence. If the appellee had admitted contributory negligence in this case, or if he had admitted facts that would have constituted contributory negligence as a matter of law, then appellants' argument would be valid and *Missouri Pacific Rd. Co.* v. *Magness,* 206 Ark. 1081, 178 S.W. 2d 493, cited by appellants would be in point with the case here. In the *Magness* case, Dr. Magness admitted that he didn't even look as he entered upon a railroad crossing where he was injured and that fact alone distinguishes his case from the case at bar.

The case of *Missouri Pacific Railroad Co.* v. *Zolliecoffer,* 209 Ark. 559, 191 S.W. 2d 587, is more in point

with the case at bar.    In the *Zolliecoffer* case an instruction was given similar to AMI 2105 given by the court in the case at bar, and in the *Zolliecoffer* case we said:

> "Finally, it is argued that the judgment is excessive because the jury did not consider appellee's contributory negligence.    There are at least two answers:  First, it is not shown that, as a matter of law, Zolliecoffer was negligent.
>
> \* \* \*
>
> A second answer is that the fact-finders were instructed not to return a verdict for the plaintiff 'unless you find from a preponderance of the evidence that Zolliecoffer was not guilty of contributory negligence.' "

We view the evidence in this case as we did in *Cohen* v. *Ramey*, 201 Ark. 713, 147 S.W. 2d 338, and in that case we said:

> "It is true that appellant testified he was driving at a conservative rate of speed and that appellees suddenly turned their car in front of his car as he was about to pass them after he had blown his horn, and that the collision was due to their contributory negligence in doing so, but the jury by their verdict adopted the version of the affair given by appellees and not that testified to by appellant.
>
> To say the least of it the evidence was in sharp conflict on the question of contributory negligence. This issue was submitted to the jury for determination and their verdict is conclusive as the evidence upon the point was in sharp conflict.
>
> It cannot be said, therefore, that as a matter of law appellees were guilty of contributory negligence."

We so hold in the case at bar.

As to appellants' second point, we find no conflict in AMI 902 and AMI 601 given to the jury by the court in this case.

Arkansas Model Instruction 601, as given to the jury, is as follows:

"You are further instructed that there was in force in the State of Arkansas at the time of the occurrence four statutes which provided: Section 75-609 of the Arkansas Statutes, annotated, reads as follows:

The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

Section 75-618 provides the following:

(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected

by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

(b) A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

Section 75-619 (a):

Any stop or turn signal when required herein shall be given either by means of the hand and arm or by signal lamps.

A violation of one or more of these statutes, although not necessarily negligence, is evidence of negligence to be considered by you along with all of the other facts and circumstances in the case.''

The trial court also gave AMI 902, as follows:

''When two vehicles are traveling in the same direction, the vehicle in front has the superior right to the use of the highway for the purpose of leaving it to enter intersecting roads or passageways, and the driver behind must use ordinary care to operate his vehicle in recognition of this superior right. This does not relieve the driver of the forward vehicle of the duty to use ordinary care and to obey the rules of the road.''

In analysing the instructions complained of, as applied to the evidence in this case, we conclude as follows: Ark. Stat. Ann. § 75-609 inserted under AMI 601 governs the *overtaking and passing* of vehicles proceeding in the same direction. It contemplates vehicles traveling straight ahead or in a direct course. Subsection (a) applies to the driver of the overtaking vehicle, (the bus driver in this case) and contemplates the simple procedure of passing at a safe distance on the left of another vehicle traveling in the same direction. It

tells the jury that the overtaking vehicle is required to stay at a safe distance on the left hand side of the highway until it has passed the overtaken vehicle and can safely return again to the right hand side of the highway.

Subsection (b) applies to the driver of the vehicle being overtaken (the appellee in this case) and contemplates the simple procedure of continuing at the same or less speed, at a safe distance on the right hand side of the highway while being passed by another vehicle traveling in the same direction. It simply tells the jury that the overtaken vehicle is to stay on its right and proper side of the highway, is not to accelerate in speed, and is to move over if necessary (when passing is not also permitted on the right) upon signal that can be heard, from the overtaking vehicle.

Arkansas Statute Annotated § 75-618 (a) and (b) included in AMI 601 tells the jury that neither driver is to turn right or left from a direct course without giving an appropriate signal in the event any other vehicle may be affected by such movement. Common sense, as well as everyday experience, dictates that this requirement applies to changing lanes as well as changing from a direct course for any other purpose.

Section 75-619 (a) included in AMI 601 merely states how the signal mentioned in the preceding section is to be made. It tells the jury that the appropriate signal required in the preceding section is to be made by means of hand and arm or by signal lamps.

We conclude that there is no conflict between AMI 902 and AMI 601 as given by the court in this case. All drivers of vehicles have the same and equal rights to enter a highway, to drive in a direct course on a highway, and to drive off of or leave a highway. It is only when these rights conflict with each other that one has superior right over the other.

Arkansas Model Instruction 902 simply tells the jury that the driver of a vehicle who is turning his vehicle from the highway into an intersecting road or passageway, has a right to the use of the highway *for that purpose* superior to the driver of a vehicle traveling in the same direction behind him.

In other words, the jury was told that the driver of a vehicle has a right to turn his vehicle off of the highway as well as to drive his vehicle on the highway, and in turning his vehicle off of the highway, in order to enter a side road or passageway, his use of the highway for that purpose is superior to the right of a driver who is behind him (in either lane) to continue driving his vehicle straight ahead.

Arkansas Model Instruction 902 reminds the jury that the driver who is following must use ordinary care in recognizing that the driver in front of him has a superior right to use the highway in making his turn for the purpose of leaving it, and AMI 902 reminds the jury that the forward vehicle making a turn to leave the highway must also use ordinary care and obey the rules of the road, meaning §75-618 (a) and (b) and § 75-619 (a), supra, in this case. When the two instructions are used together, they tell the jury that the lead vehicle has the superior right to the use of the road (AMI 902) provided the driver complies with those responsibilities placed on him by AMI 601.

We are of the opinion that these instructions are as fair to the appellants as to the appellee; that they correctly state the law as applies to the evidence in this case; that the trial court did not err in giving the instructions and that the judgment of the trial court should be affirmed.

Affirmed.