Ray DAWSON and Diamond Woods, Inc.
*v.* Dewey FULTON

87-216 745 S.W.2d 617

Supreme Court of Arkansas
Opinion delivered February 29, 1988

*Daggett, Van Dover, Donovan & Cahoon*, by: *Jesse B. Daggett*, for appellants.

*B. Michael Easley*, for appellee.

DAVID NEWBERN, Justice. This is a personal injury case in which a farm employee, the appellee Dewey Fulton, sued his employer for negligence. The jury returned a verdict in Fulton's favor, and the appellants, Ray Dawson and Diamond Woods, Inc., contend the court should have granted a directed verdict or a judgment notwithstanding the verdict. In the alternative, they contend a new trial should be granted because the damages awarded were excessive. They also seek a new trial on the basis that certain expert testimony should not have been permitted. We find substantial evidence in support of the verdict, that the damages were not so demonstrably excessive as to require reversal, and that the expert testimony was not improperly admitted, and therefore the judgment is affirmed.

### 1. Directed verdict or judgment n.o.v.

In reviewing a court's refusal to direct a verdict or grant judgment n.o.v. in favor of a defendant, the evidence should be viewed most favorably to the position of the plaintiff and the verdict, recognizing that it would have been error to have directed a verdict or granted judgment n.o.v. if the evidence was such that fair-minded persons could have drawn different conclusions. *Butler Mfg. Co.* v. *Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987); *Ferrell* v. *Whittington*, 271 Ark. 750, 610 S.W.2d 572 (1981).

From the testimony the jury could have concluded that Ray Dawson, Dewey Fulton's employer, sent another employee to Fulton to tell him to unload a dump trailer filled with gravel. Fulton protested that it would be too dangerous to unload the trailer at the current temperature, which was 16°, because the

gravel would be frozen and likely to unload unevenly, causing the trailer to overturn. Fulton attempted to perform the task as he knew Dawson's temper to be such that if he refused he would be "fired."

Fulton had obtained the load of gravel in Little Rock. The tractor pulling the trailer had become disabled on the way back to Marianna, which resulted in the gravel sitting unprotected for a number of days, absorbing precipitation which added to the moisture present in the gravel when it was loaded. Dawson knew the danger in raising one end of a 32-foot trailer under what he referred to as "strange" conditions. Fulton knew the danger too, because he had turned the same trailer over previously.

When he arrived at the scene where the trailer was parked, Fulton operated the dump controls which were located on the outside of the tractor. He raised the trailer once, and it did not unload. Other employees told him that as he had lowered it the gravel "broke loose," so he tried again, and the trailer turned over. Fulton was thrown some twenty feet from the cab and fractured his pelvis, pubic bones, and a portion of his sacrum or tailbone. He also sustained a concussion and remained hospitalized from February 6 until February 24. At an April 26 follow-up visit, X-rays revealed a painful separation fracture of two bones in his wrist which led to surgery on August 3 to fuse his wrist. As a direct result of the immobilization of the wrist following surgery Fulton's shoulder became frozen. As treatment for this painful condition he was anesthetized and manipulation of the shoulder was performed. Also as a result of the injury of February 6 Fulton developed pulmonary emboli (blood clots) which led to additional hospitalization and treatment.

The negligence alleged against the appellants is that Dawson required Fulton to perform a dangerous act under conditions he knew to be too hazardous, and that the equipment supplied to Fulton by Dawson and Diamond Woods, Inc., was faulty and known to be so by Dawson. The jury could reasonably have concluded it was negligence for Dawson to have sent Fulton to dump gravel from a 32-foot trailer in 16° weather when it was likely that the gravel was frozen and stuck together in a manner so as not to unload evenly.

Likewise, the jury could have concluded it was negligence to

have supplied defective equipment. There was testimony from Doyle Wheeler, who was qualified as an expert trucker, to the effect that a trailer which had previously turned over, as had the one in question, would undoubtedly be bent or twisted. That testimony was augmented by evidence that after one such upset, the trailer was placed by the appellants over a ditch in an attempt to "mash the kink out of it" with a front end loader. It was the witness's conclusion that even a trailer which was twisted only slightly would tend to expel its load unevenly and thus tend to overturn. Additionally, the jury could have concluded that the lever operated to raise the trailer was defective in that it was necessary to hold it continuously while unloading to prevent the trailer from coming down.

 There was evidence from which the jury could have concluded that the appellants were not negligent, but we need not discuss it because we find the evidence we have recited was sufficient to support the jury's finding. Much of the argument of the appellants is devoted to pointing out Fulton's awareness of the danger. We no longer apply the assumption of risk doctrine, but permit the jury to compare negligence pursuant to Ark. Code Ann. § 16-64-122 (1987). *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). We find no error.

## 2. Excessive damages

The injuries to Fulton were severe. There was considerable evidence from his wife with respect to the pain he suffered. He was sixty years old and had only laborer skills which he could no longer use to support himself and his family. Fulton presented evidence of $34,000 in medical bills and lost wages of $16,000. The jury awarded $270,000 on a general verdict.

 To say the court erred in refusing a new trial because the damages were excessive, we would have to find the amount awarded shocks the conscience and was the product of passion or prejudice on the part of the jury. *Martin* v. *Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986). We cannot so conclude.

## 3. Expert testimony

The appellants contend it was error to permit Doyle Wheeler, the trucker mentioned earlier, to testify as an expert.

Primarily, the objection is that he did not own a frame-type trailer like the one involved in this case. Although he said he did not own such a trailer, he demonstrated considerable knowledge of the type and the dangers in using one to dump gravel.

The appellants' objection to Mr. Wheeler's testimony is that he was not qualified to testify as an expert. That is a matter within the discretion of the trial court. *Blair* v. *State*, 284 Ark. 330, 681 S.W.2d 374 (1984); *Dixon* v. *State*, 268 Ark. 471, 597 S.W.2d 77 (1980). We find no abuse of discretion.

The appellants contend it was error to permit Dr. Douglas Stevens, a clinical psychologist, to testify with respect to Fulton's personality. Here, the objection goes not to the qualifications of the witness, but to whether his testimony was needed or usurped the function of the jury. Fulton had been to several physicians and had been uncommunicative about his condition. Dr. Stevens said Fulton's stoic personality was responsible. That testimony was relevant to proof of injury. His testimony went also to show that Fulton was a "follower," and thus tended to take orders as a "good soldier" and not refuse them even in the face of danger. That testimony related to comparison of Fulton's negligence with that of the appellants.

The appellants cite *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (Ark. App. 1980), for the proposition that Dr. Stevens's testimony should have been excluded because it dealt with a subject the jurors could understand without it. In that case the testimony of a psychologist was offered to show, through the "science of human perception," why a witness might recall or not recall events. It was held that the ability to recall, and the reasons for it, were subjects within the knowledge of average persons serving on a jury, thus it was not improper to exclude the testimony:

Also cited is *Williams* v. *Carr*, 263 Ark. 326, 565 S.W.2d 400 (1978), in which we held that it was not proper to receive the testimony of a mortician about grief of a family member in a wrongful death case because the mortician's attendance at mortuary school and over 200 funerals did not qualify him to do so. We noted the mortician's testimony illustrated his "very limited knowledge" of the subject matter, and his definition of "extraordinary grief" was contrary to one we had given in a

previous case.

Dr. Stevens's testimony was different from testimony on "human perception." The court of appeals in the *Caldwell* case noted that the science of "human perception" was new and, within the broad discretion of the trial court, not improperly excluded when its probative value was balanced against the danger of its prejudicial effect. Nor is personality evaluation in this case like grief evaluation in *Williams* v. *Carr, supra.* While jurors may be familiar with grief expressed upon loss of a family member, they are not so familiar with personality traits which might cause one not to reveal one's condition to a physician. Neither we nor the appellants question the qualifications of Dr. Stevens as a psychological expert as we questioned the qualifications of the mortician as a grief expert.

■ The question here is whether the testimony, in the words of Arkansas Rules of Evidence 702, "assist[s] the trier of fact to understand the evidence. . . ." We hold that the appellants have not shown that the testimony of Dr. Stevens was improper under that standard.

Affirmed.