Billy C. SKINNER *v.* R.J. GRIFFIN & COMPANY

93-2                                    855 S.W.2d 913

Supreme Court of Arkansas
Opinion delivered June 14, 1993

*Jennifer Morris Horan*, for appellant.

*Anderson & Kilpatrick*, by: *Michael E. Aud*, for appellee.

ROBERT H. DUDLEY, Justice. This issue on appeal is whether the trial court erred in charging the jury on comparative fault. We hold that it was error to give the instruction, and, because the

error is not shown to be harmless, we reverse and remand.

The testimony about the accident giving rise to the instruction is virtually undisputed. Plaintiff was an experienced backhoe operator who owned his own backhoe and tractor and subcontracted with general contractors for backhoe work on large construction projects. The defendant, R. J. Griffin & Company, was the general contractor for building Charter Hospital in Maumelle. The defendant general contractor employed the plaintiff as a subcontractor to do most of the excavations for the footings, grade beams, piers, and pilasters in the construction of the hospital. The defendant general contractor had the responsibility of marking the lines where the plaintiff was to dig. The lines were initially marked by tying nylon staging, or mason's line, between wooden stakes. White crushed lime was then poured over the mason's line to mark the boundaries. The depth of the excavation was specified. It was the defendant general contractor's job to see that the subcontractors had a safe place to work, and, therefore, plaintiff contended that it was the defendant's job to see that the mason's line, stakes, and other similar objects were picked up before the backhoe operations were started. On several occasions the defendant did not pick up the string, and on one occasion, the defendant's general superintendent even joked that he would not charge the plaintiff for the string that got wrapped around the axles of his machine.

Plaintiff's machine had a loader in the front, a tractor in the midsection, a backhoe in the back, and outriggers, or movable booms, with pads, or feet, at the end of each outrigger. The outriggers were used to secure and level the unit. There was an enclosed cab in the midsection which contained a seat that could be pivoted to face either forward or backward. At the time of the accident, the plaintiff had the rear window of the cab folded down, or open.

A fifteen-to-twenty foot length of the mason's line had been covered with about a quarter of an inch of mud and silt that came from a heavy rain. The line was described as "being tracked over and covered with dirt and mud." As the plaintiff was preparing to move his machine to reposition the backhoe, he turned forward, lifted the outriggers off the ground, raised the front bucket, picked the backhoe up off the ground, and put the tractor into low

gear. As he started to move, the plaintiff was turning the seat to face toward the rear when the mason's line with a stake caught on the pad of one of the outriggers. The pad was covered with the same mud and silt. The movement of the pad caused the line to stretch until it snapped. It then whipped through the open back window of the cab, struck the plaintiff in the left eye, and caused injury to the eye. The evidence showed that the line was not visible to plaintiff, and, in addition, one could not sit in the backhoe seat and see the outrigger when it was on the ground. In sum, the plaintiff knew that lines had been left about the construction project, but there was no evidence to show that he failed to keep a lookout for such lines.

The defendant requested an instruction on the plaintiff's comparative fault because the plaintiff had not worn safety goggles. On cross-examination the plaintiff admitted that he had not worn safety goggles, but there was no showing of any safety law or regulation that required the wearing of such goggles, and there was no testimony whatsoever that goggles would have either prevented or reduced the damage to the plaintiff's eye. There was no showing of what types or kinds of goggles, if any, that were suitable and available for backhoe operators. In fact, there was testimony that backhoe operators could not wear safety goggles that were enclosed on the side because it would prevent them from having the necessary side vision. All but one of the witnesses testified that they had never seen backhoe operators use safety goggles in digging operations. That one witness testified that he had never seen a backhoe operator use safety glasses, unless it was at a paper mill in Pine Bluff, but even that witness did not state that glasses would have prevented the injury. There was no showing of the sizes, shapes, or strengths of goggles available, and there was no showing of whether the line and stake hit the plaintiff from the front or from the side, or whether that would have made a difference in the amount of damage to the eye. In short, there was no testimony whatsoever that safety goggles would have prevented or reduced the extent of the plaintiff's injury, and yet, the trial court gave the standard A.M.I. comparative fault instruction over the plaintiff's objection.

The plaintiff appeals and argues that the trial court erred in giving the comparative fault instruction since the record is devoid of any evidence that would establish fault on the plaintiff's part or

establish a causal connection between the plaintiff's failure to wear safety glasses and the injury he sustained. The argument is well taken. Comparative fault is an affirmative defense, ARCP Rule 8(c), and Ark. Code Ann. § 16-64-122 (1987), in the pertinent part, provides:

*Comparative Fault.*

(a) In all actions for damages for personal injuries . . . in which liability is predicated upon fault, liability shall be determined by comparing the fault chargeable to the claiming party with the fault chargeable to the party . . . from whom the claiming party seeks to recover damages.

(c) The word "fault" as used in this section includes any . . . omission . . . *which is a proximate cause of any damages sustained by any party.* (Emphasis added.)

Under the express language of the statute there must be a determination of "proximate cause" before any "fault" can be assessed against the claiming party. *Baker* v. *Morrison*, 309 Ark. 457, 829 S.W.2d 421 (1992). While the question of proximate cause is usually a question for the jury, when the evidence is such that reasonable minds cannot differ, the issue becomes a question of law to be determined by the trial court. *Wilson* v. *Evans*, 248 Ark. 101, 679 S.W.2d 205 (1984). Here, reasonable minds cannot differ: The evidence at trial did not establish a causal connection between the failure to wear safety goggles and the damage to plaintiff's eye, and, accordingly, the trial court erred in giving the instruction.

Without a citation of a case, or any other authority, the defendant asks us to hold that there was such a causal connection because "[i]t takes no expert to demonstrate that any decent protective eyewear would have prevented the string from striking appellant's eye, in which event, no such injury could have possibly occurred." We cannot so hold because here the jury had no basis, except for pure guesswork, to find that safety goggles would have totally prevented the injury or to what degree they would have reduced the injury. The proof in this case did not show what types of goggles or glasses were available or practical for a backhoe operator to wear. Further, assuming goggles were available and

practical to wear, the proof did not show whether they would have prevented the string or the stake from entering from the side of the glasses; what the tensile strength of such glasses was; whether the whipping force of the string and stake, if coming from the front, would have broken or shattered the glasses; to what extent, if any, the glasses would have reduced or eliminated the injury if they had only slowed the string whipping from the side; or to what extent, if any, the glasses would have reduced the injury if they had not shattered or broken if the force was from the front. Thus, a causal connection between the failure to wear some unspecified type of goggles and the injury to plaintiff's eye was not established beyond mere conjecture and speculation. In *Cates v. Brown*, 278 Ark. 242, 247, 645 S.W.2d 658, 661 (1983), we said that "conjecture and speculation cannot be permitted to replace proof."

We hold that the trial court erred in giving the instruction, but the case was submitted to the jury on a general verdict and the plaintiff is not able to show that he suffered any prejudice by the giving of the erroneous instruction. It is possible that the jury merely thought the plaintiff failed to prove negligence on the part of the defendant, and the erroneous instruction concerning comparative fault did not enter into the deliberation. In an identical case involving the giving of an erroneous instruction on comparative fault, we held we must reverse and remand for a new trial even though prejudice was not proved. *Little Rock Electric Contractors, Inc. v. Okonite Co.*, 294 Ark. 399, 744 S.W.2d 381 (1988). The holding was based on our cases that provide when an error is shown in an instruction given, it is presumed that the error was prejudicial until the opposite is established. *See, e.g., Safeway Stores, Inc. v. Gross* 206 Ark. 240, 398 S.W.2d 669 (1966). Even so, we are aware that in other cases involving the giving of erroneous instructions we have said that error is no longer presumed to be prejudicial. *See, e.g., Peoples Bank & Trust Co. v. Wallace*, 290 Ark. 589, 711 S.W.2d 659 (1986). We acknowledge our inconsistent standard and now seek to prevent any further confusion. Henceforth, in cases involving a trial court's giving of an erroneous instruction involving the trial mechanism to be used in deciding either a civil or criminal case, we will not require the appellant to demonstrate prejudice. Such a requirement is often an impossible burden, and the requirement

of an impossible burden, in effect, renders the requirement of correct instructions on the law meaningless. As recently said by the Supreme Court of the United States, "A reviewing court in such a case can only engage in pure speculation-its view of what a reasonable jury would have done. When it does that, the wrong entity judges the defendant guilty." *Sullivan* v. *Louisiana,* No. 92-5124 (June 1, 1993). Of course, an appellee may demonstrate that the giving of an erroneous instruction was harmless, and we would affirm. Some examples of this are where the jury demonstrably was not misled because the jury rejected the theory of the erroneous instruction, *see, e.g., Cates* v. *Brown,* 278 Ark. 242, 645 S.W.2d 658 (1983), or where the erroneous instruction was obviously cured by other correct instructions, *see, e.g., Moore* v. *State,* 252 Ark. 526, 479 S.W.2d 857 (1972).

Reversed and remanded.

HAYS and BROWN, JJ., dissent.

STEELE HAYS, Justice, dissenting. The majority holds that the defendant must present specific evidence of negligence by the plaintiff in order to be entitled to an instruction on comparative negligence. I respectfully disagree and suggest that approach seriously undermines the purpose and intent of comparative negligence. The statute itself is couched in the broadest possible language:

> In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

*See* Ark. Code Ann. § 16-64-122 (1987).

Comparative negligence is the successor by statute to contributory negligence, defined as

> "Contributory negligence" is the doing of something by plaintiff which a person of ordinary care and prudence would not have done under the same or similar circumstances, or failure of plaintiff to do something which a person of ordinary care and prudence would have done

under same or similar circumstances, and which conduct on part of plaintiff contributed, however slightly, in whole or in part, to occurrence and damages, and without which damages would not have been sustained.

*Dempsey* v. *United States*, 176 F. Supp. 75 (D.C. Ark. 1959).

Certainly, comparative negligence is an affirmative defense which must be pled, and the burden of proof is on the defendant to prove comparative negligence, but those are issues for the jury. *Wasson* v. *Warren*, 245 Ark. 719, 434 S.W.2d 51 (1968). And that proof can, and often does, arise by reasonable inference from the circumstances of the case. *Headrick* v. *H.D. Cooperage Co.*, 97 Ark. 553, 134 S.W. 957 (1911). Only when it can be said with certainty that reasonable minds could come to no other conclusion should the issue be taken from the jury.

The dynamics of this incident are that Skinner alone set in motion the forces that resulted in his injury. In that setting, especially, the defendant is entitled to the comparative negligence instruction. The majority asserts that there is no evidence that Skinner failed to keep a lookout for lines of string. But direct evidence of that issue is not required, as there was ample evidence that lines were strung all around the job site and Skinner was well aware of it. That is sufficient.

*Richison* v. *Boatright*, 238 Ark. 579, 383 S.W.2d 287 (1964), is illustrative. The plaintiff was injured when he stepped through a piece of unsupported roofing felt and fell against the ceiling joists. Plaintiff appealed a verdict for the defendant, arguing the jury should not have been instructed on contributory negligence because there was no evidence to justify the instructions. Justice George Rose Smith wrote:

> On the issue of negligence the jury could have found that Richison was at fault. He had assisted in putting down the decking and must have known that the ends of the boards were staggered. The jury could have found that he was careless in walking too close to the edge, even if the protective board referred to by McKinney had somehow been removed. On this point the case is similar to *Headrick* v. *H.D. Cooperage Co.*, 97 Ark. 553, 134 S.W. 957, where the plaintiff stepped into a hole in the floor of a sawmill. He

knew that the hole was there, but its exact location had been obscured by an accumulation of sawdust. We held that his contributory negligence was a matter for the jury.

It seems clear that this is a case where reasonable minds could readily infer from the circumstances that Skinner could have contributed to his own injury in a variety of ways: by not wearing goggles, by not closing the rear window of his backhoe, which he chose to leave open, by not keeping a better lookout, or not exercising reasonable care for his own safety. Even the means by which he positioned and operated his backhoe were factors the jury could have considered. Only if it could be said that under no conceivable circumstances could Skinner have contributed to his own injury would it have been proper to refuse the comparative negligence instruction. I believe the trial court was correct and should be affirmed.

BROWN, J., joins in this dissent.

ROBERT L. BROWN, Justice, dissenting. The issue is whether Skinner contributed to his own eye injury by not wearing safety goggles. I view this as a matter for the jury to decide, not for the majority to dictate as a matter of law. With its decision, the majority reverses a jury verdict and cites the trial judge for error in giving the comparative fault instruction. I disagree and would affirm the verdict.

There are two circumstances in this case that should be taken as givens and should not be the subject of disagreement. Unhappily, they are. The first is that when a person operates a backhoe on a construction site without the protection of a cab window, there is always the risk that debris in the form of dust, dirt, rocks, or other foreign matter will enter the cab and afflict the driver.

The second is that goggles offer some protection against foreign matter striking the eye.

The idea that goggles are worn for safety reasons is generally accepted in our society. Witness two definitions of the generic term, goggles, in standard dictionaries:

A pair of large, usually tinted spectacles with shielding sidepieces worn as a protection against wind, dust, or

glare.

*The American Heritage Dictionary of the English Language* (1971).

> Large spectacles equipped with special lenses, protective rims, etc. to prevent injury to the eyes from strong wind, flying objects, blinding light, etc.

*The Random House Dictionary of the English Language* (1967).

Thus, it strains belief that the majority concludes that safety goggles, which by common definition include side pieces and rims for protection against flying objects, would not have afforded Skinner some relief. The majority, however, states:

> While the question of proximate cause is usually a question for the jury, when the evidence is such that reasonable minds cannot differ, the issue becomes a question of law to be determined by the trial court. *Wilson* v. *Evans*, 248 Ark. 101, 679 S.W.2d 205 (1984). Here, reasonable minds cannot differ: The evidence at trial did not establish a causal connection between the failure to wear safety goggles and the damage to plaintiff's eye, and, accordingly, the trial court erred in giving the instruction.

Is the majority really saying that the fact that goggles protect the eyes must be proven? Do we really need expert testimony to make a case on the point that failure to wear goggles can lead to eye injury? Does that also mean that circumstances such as the fact that shoes protect one's feet and gloves protect one's hands must also be proven in a court of law to be considered? I cannot conceive that that is the law. Surely these are facts not subject to reasonable dispute of which judicial notice may be taken. Ark. R. Evid. 201; *see, e.g., West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991) (judicial notice of the *Physician's Desk Reference* may be taken for some purposes).

This is not a case such as we had in *Baker* v. *Morrison*, 309 Ark. 457, 829 S.W.2d 421 (1992), where we held that proof was necessary to show a causal connection between failure to wear seatbelts and injury to the plaintiffs in a car accident. In *Baker* we could not determine, short of proof, whether the absence of seatbelts contributed to the plaintiff's injuries in the wreck. In the

case before us, there is no doubt that safety goggles would have covered the eyes and thwarted injury, at least to some extent.

Billy Skinner was a subcontractor and his own boss. It was his decision either to wear or not to wear safety goggles on the job. There was testimony that at one job — the Pine Bluff paper mill — backhoe operators did wear goggles. Skinner chose not to do so.

In our society we all take risks on a daily basis. At times we take these risks because to do otherwise is inconvenient and bothersome. For example, a homeowner may mow the grass over rocky terrain without goggles and be hit in the eye with gravel. An adult may ride a moped without a helmet and be injured in a fall. A teenager may weed a garden without gloves and develop poison ivy. We all recognize that we cause our injuries in part in such situations.

As the instruction says, juries are not supposed to set aside common knowledge and everyday experience. AMI 102. Nor should judges. I would acknowledge some causal relationship between Skinner's conscious decision not to wear goggles and the eye injury and leave the matter to the jury. Because of that, I respectfully dissent.

HAYS, J., joins.