**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-3817

| | | |
|---|---|---|
| Mary Duston, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Daymark Foods, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 13, 1997

Filed:  September 9, 1997

_____

Before  RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and
BEEZER,[1] Circuit Judge.

_____

WOLLMAN, Circuit Judge.

Daymark Foods, Inc. (Daymark) appeals from the judgment entered by the
district court[2] on the jury's verdict in favor of Mary Duston.  We affirm.

_____

[1]The HONORABLE ROBERT R. BEEZER, United States Circuit Judge for the
Ninth Circuit, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern
District of Arkansas.

Mary and her husband, Arthur, worked as team truck drivers for Daymark, delivering fresh flowers to various locations across the United States. On April 26, 1994, the Dustons drove from Atlanta, Georgia, to Miami, Florida, to pick up flowers. They returned to Atlanta and, around midday on April 28, continued on to Indianapolis, Indiana, where they arrived between ten and eleven that evening. From that time until six or seven a.m. on April 29, they unloaded the 300 boxes of flowers they had delivered.

Arthur then informed a Daymark dispatcher that he and Mary had completed their run. The dispatcher told Arthur that he and Mary were to drive to Chattanooga, Tennessee, where they were to pick up another load and deliver it to Indianapolis. Arthur told the dispatcher that he and Mary were tired and asked if another team could make the run. The dispatcher replied that no one else was available and that the Dustons had to make the run. Arthur and Mary began the drive to Chattanooga, with Arthur at the wheel and Mary in the sleeper compartment of the cab.

The trip did not go well, for Arthur began experiencing stomach cramps and diarrhea and stopped twice at rest stops. After he had driven approximately 300 miles, Arthur told Mary that he was about to vomit and asked her to look for a bag. While Mary was doing so, Arthur lost consciousness. Mary felt the truck hit a bump, whereupon she looked out of the compartment and saw Arthur slumped over at the wheel. The truck careened off the highway, through a fence, and down a hill, throwing Mary about in the sleeper compartment with such force that she suffered a herniated disk in her cervical spine.

Mary filed suit in Arkansas state court, alleging that Arthur was negligent in driving and that Daymark, as Arthur's employer, was vicariously liable. Daymark removed the case to federal court. The jury found in favor of Mary, awarding her $35,000 in damages.

On appeal, Daymark argues that it is entitled to judgment as a matter of law, contending that Mary failed to prove negligence. We review the denial of a motion for judgment as a matter of law under the same standard as that employed by the district court: we consider the evidence in the light most favorable to the prevailing party and will affirm if reasonable persons could differ regarding the conclusions to be drawn from the evidence. See Sherbert v. Alcan Aluminum Corp., 66 F.3d 965, 967 (8th Cir. 1995).

Arkansas law governs the standard of care in this diversity action. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). The Arkansas Supreme Court has defined negligence as "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence." Scully v. Middleton, 751 S.W.2d 5, 5 (Ark. 1988). "[A] negligent act arises from a situation where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner." Ouachita Wilderness Institute, Inc. v. Mergen, 947 S.W.2d 780, 784 (Ark. 1997). The plaintiff must also show "that the negligent act proximately caused the damages sustained and that such damages were reasonably foreseeable." Scully, 751 S.W.2d at 6.

The doctor who examined Arthur after the accident testified that Arthur's blackout was caused by a "vasovagal reaction," which is prompted by the stimulation of the vagus nerve and results in a slowing of the heart rate and the lowering of blood pressure, with a resultant loss of consciousness. The doctor opined that Arthur's vasovagal reaction was caused by stress, fatigue, and stomach cramps that were kindled by his fatigue.

Daymark argues that Arthur could not reasonably foresee that he would experience a vasovagal reaction from his fatigue and thus was not negligent in persisting in driving. The question, however, is not whether Arthur would have been

able to predict precisely this reaction, but whether a reasonable person would have been able to foresee that driving while suffering fatigue would create a risk of harm. See Catlett v. Stewart, 804 S.W.2d 699, 703 (Ark. 1991). "'If the act or omission is of itself negligent and likely to result in injury to others, then the person guilty thereof is liable for the natural consequences which occurred, whether he might have foreseen it or not.'" Id. (quoting Bergetz v. Repka, 424 S.W.2d 367, 369 (Ark. 1968)); see Bolstad v. Pergeson, 806 S.W.2d 377, 379 (Ark. 1991).

We have considered Daymark's claim of error regarding the district court's jury instruction on negligence and conclude that it is without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-