Steve STEVENSON and Petro Stevenson *v.* UNION STANDARD INS. CO. and Helena Ins. & Real Estate Co.

87-312 746 S.W.2d 39

Supreme Court of Arkansas
Opinion delivered March 7, 1988

*Gill, Johnson & Gill,* by: *Kenneth Johnson,* for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.,* by: *Glenn Jones,* for appellee Union Standard Insurance Company.

*Barrett, Wheatley, Smith & Deacon,* for appellee Helena Insurance and Real Estate Company.

DAVID NEWBERN, Justice. The appellants, Steve and Petro Stevenson, sued the appellees, Union Standard Ins. Co. (Union) and Helena Ins. & Real Estate Co., (Helena) for the tort of bad faith resulting from their alleged intentional failure to pay the

Stevensons' insurance claims. In this appeal from a summary judgment in favor of Union and Helena, the Stevensons contend there was a fact question remaining, and thus summary judgment was improper. We agree with the trial court's conclusion to the contrary and thus affirm.

The Stevensons owned two businesses, a food mart and a disco. Through Helena, they purchased fire insurance for the businesses. Policies were written through which Union covered the building, contents, and business interruption with respect to the food mart, and business interruption with respect to the disco. The disco building and contents were covered by another carrier.

A fire occurred at the food mart on February 27, 1982. An adjuster worked the claim promptly, and by March 5, 1982, estimates had been obtained. On May 6, 1982, two checks representing partial payment for the building and contents were tendered. The affidavit of Petro Stevenson stated that he rejected the checks at first because they did not correspond to the figures he had presented, and the checks contained no notations as to what they were for. He said Mr. Runyan, the adjuster, told the Stevensons that he had been instructed by Union to reduce their loss of earnings, or business interruption, payment if they did not accept the checks. They allegedly reported this to a Helena representative who convinced them to accept the checks by assuring them he would recommend to Union that they not be penalized on their business interruption coverage. The affidavit also stated that there was a lengthy dispute with the adjuster about $300 which was a bill for electrical work which had been included in the original building repair bill.

In addition, there was a misunderstanding with the adjuster over whether the check for contents included only inventory or included both inventory and equipment. By June 18, 1982, the adjuster had fixed figures for the total losses on the building and the contents, according to the reports he submitted to Union. There remained, however, a dispute over the business interruption coverage. The Stevensons contended that they were entitled to $3,000 per month up to a maximum of $12,000. The adjuster contended they were entitled to 25% of their proven loss of profits up to $3,000 per month. There was a question whether the Stevensons were required to submit a profit and loss statement.

They submitted such a statement in August, 1982, and an offer of $5,133.20 was made to them on August 13, 1982, to settle the business interruption claim. They rejected a check for $15,556.31 which included the additional amounts for the contents and building losses in addition to the business interruption loss.

In September, 1982, the Stevensons filed a complaint with the insurance commissioner, and in November, Union offered them $23,000 in full settlement of their claim. By then, the food mart was out of business, and the Stevensons rejected the offer.

The disco was damaged by fire in April, 1982. Exhibits showed that Union promptly notified Helena that the coverage violated its policy against insuring dance halls. When the Stevensons spoke with a Helena representative, they were made aware there was a problem but assured it would be worked out. They were not told that Union had denied coverage. When they spoke with a Union representative in September, 1982, they were told Union rejected coverage, and it was suggested they take the matter up with Helena.

There was the same sort of misunderstanding with respect to the business interruption coverage for the disco as had occurred in the negotiations over coverage of the food mart. The Stevensons wanted $9,000, or $3,000 per month for the period the disco was closed.

In November, 1982, along with its draft of $23,000 on the food mart claim, Union tendered $10,000 on the disco claim. By then the disco was out of business again, and the Stevensons rejected the tender. They filed suit against Union and Helena. The complaint contained two counts. Count I alleged that Union had failed to pay the business interruption loss and part of the building and contents losses on the food mart, and was liable for compensatory damages for loss of profits of $30,000 as well as $2,000,000 punitive damages. Count II asserted that Union and Helena colluded to hide the coverage dispute from the Stevensons causing interruption of business in addition to that caused by the fire, and thus they were entitled to $9,000 lost profits, $10,000 business interruption damages, $2,000,000 punitive damages, a 12% penalty, and costs.

*Remaining genuine issue of material fact*

Rule 56(c) of the Arkansas Rules of Civil Procedure provides that, upon a motion for summary judgment,

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

There is no remaining material fact at issue here, for even if the evidence is characterized as the Stevensons would have it, it would not prove a claim of bad faith as that tort is defined in *Aetna Casualty & Surety Co.* v. *Broadway Arms Corporation*, 281 Ark. 128, 664 S.W.2d 463 (1983), where we said:

> In [*Members Mutual Ins. Co.* v. *Blissett*, 254 Ark. 211, 492 S.W.2d 429 (1973)] we settled the issue when we concluded that in order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type claim be based upon negligence or bad judgment so long as the insurer is acting in good faith. . . . [I]n an action of this type for tort, actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge. Actual malice may be inferred from conduct and surrounding circumstances. [281 Ark. at 133-134, 492 S.W.2d at 465]

We find no evidence whatever that there was bad faith, as thus defined, in the conduct of Union with respect to the disco claim. The only evidence is that the delay was caused by Union's dispute with Helena over coverage, and the Stevensons' dispute with the adjuster over the amount of coverage. There is nothing to show that these were other than real and honest controversies. While Helena may have misrepresented the facts in response to

the Stevensons' inquiries about coverage, the proof does not show the kind of malice we described above.

The Stevensons' evidence with respect to the food mart negotiations presents a closer case, but it too falls short of a showing of the malice required for a bad faith action. In an adjuster's report dated June 18, 1982, a figure for "exact contents loss" was presented to Union. In that same report appeared the following:

> We have not submitted the insureds a Proof of Loss for the supplemental on the involved building for the electrical items and or the remainder of the contents since we had hoped that we could conclude the loss in its entirety by concluding the loss of earnings along with the above mentioned two items. It is our opinion that if we pay the rest of the loss without concluding the loss of earnings with the insureds, we will spend a few more months negotiating a settlement on the loss of earnings.

The Stevensons suggest that this proof could be construed as showing that Union, through its adjuster, proposed putting pressure on them to accept a business interruption offer which Union knew to be lower than that required by the policy. They note that in the *Aetna* case there was some evidence that an Aetna representative met with the claimant and said that if Aetna paid $75,000 on an inventory loss shown on the claimant's books at $23,000, the IRS might raise a question about it. We said that the evidence presented a fact question which we would not address because we were remanding the case for a new trial on another issue.

The Stevensons claim there is more evidence of pressure to settle here than in the *Aetna* case. However, nothing was presented to the court showing that the dispute over the business interruption coverage was not legitimate or that Union was required to pay part of the food mart claim while part of it remained outstanding. In the *Aetna* case we left open the "pressure to settle" question, given the fact that the case was to be remanded on another issue. That does not amount to a statement, much less a holding, that any showing of pressure to settle creates a fact question sufficient to thwart a summary judgment on a claim of bad faith.

As with any tort requiring a showing of malice or other state of evil mind on the part of the alleged tortfeasor, examples are helpful. An example of the sort of evidence which has been held not to constitute bad faith appears in *Cato* v. *Arkansas Municipal Health Benefit Fund*, 285 Ark. 419, 688 S.W.2d 720 (1985). The trial court found no bad faith where there was a dispute over coverage of a self-inflicted gunshot wound, and the insurer, without notice to its insured, the plaintiff, paid the hospital, which had provided care to the insured, a portion of the claim. We agreed with the trial court, although we reversed on another issue, that refusal to pay a disputed claim does not constitute the tort of bad faith. While the Stevensons contend there was no disputed claim in this case, that ignores evidence in exhibits submitted by them showing their dispute with Union over the degree of coverage for business interruption.

An example of a case in which we agreed there was bad faith in the conduct of an insurer is *Employers Equitable Life Ins. Co.* v. *Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984), where the evidence showed that the insurer altered its records to avoid paying a claim with respect to which there was no legitimate dispute whatever. The evidence in this case does not even come close to that sort of showing, thus we find the summary judgment was proper.

Affirmed.