SOUTHERN FARM BUREAU CASUALTY INSURANCE
COMPANY *v.* Elisha ALLEN

96-122                                                      934 S.W.2d 527

Supreme Court of Arkansas
Opinion delivered December 23, 1996

*Laser, Wilson, Bufford & Watts, P.A.*, by: *Sam Laser* and *Brian Allen Brown*, for appellant.

*Gibson Law Office*, by: *C.S. "Chuck" Gibson, II*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Southern Farm Bureau Casualty Insurance Company, appeals the judgment of the Desha County Circuit Court awarding its insured, Appellee Elisha Allen, $10,000.00 in compensatory damages pursuant to directed verdicts and $75,000.00 in punitive damages pursuant to a jury verdict. Appellant also appeals from a subsequent order awarding prejudgment and postjudgment interest, costs, penalty, and attorney's fees. For reversal, Appellant argues the trial court erred in submitting to the jury the tort claims of first-party bad faith and outrage. This appeal involves questions about the law of torts, and our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(15). We find no merit to Appellant's arguments and affirm.

*Facts and Procedural History*

The complaint alleges the following facts. Appellee is Appel-

lant's insured. Appellee's son, Anthony Dewayne Allen, was living with Appellee when he was killed in a motor vehicle accident on February 29, 1992. Appellee's son, Eddie Allen, visited Appellant's local office and informed the agent that the family had incurred funeral expenses for Anthony Allen's funeral and that Anthony Allen was living at Appellee's home. The local agent, Joe Herron, then informed Eddie Allen that there was no coverage for Anthony Allen. In May 1993, Appellant determined there was coverage available for Anthony Allen and paid Leroy Hill, the driver of the other vehicle involved in the accident on February 29, 1992, $26,000.00 for personal and property damages.

Based on the aforementioned facts, the complaint alleges two causes of action — breach of contract and the tort of first-party bad faith. As to the claim for breach of contract, the complaint states that Appellee's policy included coverage for Anthony Allen's funeral expenses under "COVERAGE C. MEDICAL PAYMENTS" and that Appellant breached its obligation pursuant to Ark. Code Ann. § 23-89-202 (Repl. 1992) to provide no-fault death-indemnity benefits. As to the tort claim for first-party bad faith, the complaint alleges among other things, that Appellant's acts of bad faith included failure to pay the funeral expenses under the medical-payments coverage and failure to pay benefits to Appellee after acknowledging coverage and paying benefits to Leroy Hill.

The case was tried to a Desha County jury. At the close of Appellee's case as plaintiff and with agreement from Appellant, the trial court directed a $5,000.00 verdict for Appellee on the medical-payments coverage. Citing section 23-89-202, and Ark. Code Ann. § 23-89-203 (Repl. 1992), and *American Nat'l Property & Casualty Co. v. Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994), and over Appellant's protest, the trial court also directed a $5,000.00 verdict for Appellee on the death-benefits coverage on the basis that Elisha Allen's rejection of that coverage in 1980 was no longer effective because he had purchased and insured vehicles since the 1980 rejection without signing subsequent rejections. Appellant does not challenge the direction of these verdicts on this appeal.

The trial court denied Appellant's motion for directed verdict on the tort of bad faith and instructed the jury that the issues of medical-payments coverage and death-benefits coverage had already been decided, thus the only issue that would be presented to them was the issue of punitive damages. The jury returned a general

verdict for Appellee and fixed punitive damages of $75,000.00. The trial court entered an order consistent with the directed verdicts of $10,000.00 in compensatory damages and the jury verdict of $75,000.00 in punitive damages. This appeal followed.

## Claim for Bad Faith

At the close of Appellee's case as plaintiff, Appellant moved for a directed verdict on Appellee's tort claim for bad faith on the basis that Appellee had not presented any evidence of affirmative wrongful acts by Appellant. Appellant admitted breaching its contract with Appellee, but contended the breach was from oversight rather than from hatred, ill will, or dishonesty. The trial court ruled that Herron's testimony presented a jury question as to bad faith and denied Appellant's motion.

Appellant then presented its case, which consisted of a single witness, Appellant's employee Steve Murray, and three exhibits: (1) no-fault endorsements for medical benefits, accidental-death benefits, and income-disability benefits; (2) Appellee's application for insurance dated January 4, 1980, where he rejected uninsured-motorist coverage and no-fault coverage; and (3) Appellee's 1980 declaration sheet. Murray testified that he and Scott St. John, a claims representative for Appellant, determined that Anthony Allen was a resident of Appellee's household and therefore coverage existed. Murray stated that based on that determination, Appellant paid $27,500.00 to Hill and Hill's passenger. Appellant then rested and "renew[ed] its motion for a directed verdict for the reasons stated before." Again, the court denied the motion, ruling there were issues to be decided by the jury.

As its first point for reversal of this ruling, Appellant contends there was no evidence from which a reasonable person could conclude Appellant committed the tort of bad faith, therefore the trial court erred in submitting this issue to the jury. Specifically, Appellant contends there is no substantial evidence of affirmative acts to support a claim of bad faith. Rather, in Appellant's view, there is only evidence that Appellant failed to recognize that Appellee had medical-payments coverage. In essence, Appellant contends its actions were negligent but not malicious and relies heavily on our prior decisions that negligence, gross ignorance, or a complete failure to investigate a claim are not sufficient to establish a claim for the tort of bad faith. *First Marine Ins. Co. v. Booth*, 317 Ark. 91, 876

S.W.2d 255 (1994); *Reynolds* v. *Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).

We recently summarized our law on the tort of bad faith:

> The components of the tort of bad faith are affirmative misconduct by an insurer, without a good-faith defense, which is dishonest, malicious, or oppressive in an attempt to avoid liability under a policy. *Aetna Casualty and Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983).

*R.J. Jones Excavating Contractor, Inc.* v. *Firemen's Ins. Co.*, 324 Ark. 282, 289, 920 S.W.2d 483, 487 (1996). This court has also said that a claim for bad faith

> cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type claim be based upon negligence or bad judgment so long as the insurer is acting in good faith. . . .[I]n an action of this type for tort, actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge. Actual malice may be inferred from conduct and surrounding circumstances.

*American Health Care Providers, Inc.* v. *O'Brien*, 318 Ark. 438, 441–42, 886 S.W.2d 588, 590 (1994) (quoting *Aetna Casualty & Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983)).

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence, which is evidence that goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Barnes, Quinn, Flake & Anderson, Inc.* v. *Rankins* 312 Ark. 240, 848 S.W.2d 924 (1993). It is not our province to try issues of fact, we simply review the record for substantial evidence to support the jury's verdict. *John Cheeseman Trucking, Inc.* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993). In determining whether there is substantial evidence, we view the evidence in the light most favorable to the party against whom the verdict is sought and give the evidence its strongest probative force. *Integon Indem. Corp.* v. *Bull*, 311 Ark. 61, 842 S.W.2d 1 (1992).

After reviewing the evidence in this case, we find two instances of alleged wrongdoing on Appellant's part sufficient to cre-

ate a jury question as to Appellant's bad faith. Those instances are the two conversations that occurred between Eddie Allen and Herron in Herron's office shortly after the fatal accident and then about one year later.

The central issue of the first conversation was Anthony Allen's residence. It is undisputed that, as a resident of Appellee's household, Anthony Allen would be an omnibus insured under Appellee's policy. Eddie Allen testified that he and Herron discussed that Anthony Allen's insurance policy had lapsed. He stated the two of them then began discussing coverage under Appellee's policy. Eddie Allen testified that Herron asked him where Anthony Allen lived at the time of the accident and that he told Herron Anthony Allen had been living with their father. Eddie Allen testified further that Herron informed him there was no coverage for Anthony Allen under Appellee's policy.

Appellant relies on Herron's testimony as to this conversation. Herron stated that he never asked Eddie Allen any questions about coverage for Anthony. According to Herron's testimony, he recalled that Eddie Allen inquired about coverage for Anthony Allen and that he only checked for coverage under Anthony Allen's policy. Herron admitted knowing that people commonly insure their children on their policies, but expressly denied checking to see if Anthony Allen was covered under Appellee's policy.

The central issue of the second conversation between Herron and Eddie Allen, which occurred about one year after the first conversation, was the dispute between the parties to this lawsuit. Eddie Allen testified that Herron asked him if St. John had been out to talk to his father or had offered his father a settlement and if St. John and his father had been able to reach any kind of agreement. Eddie Allen stated that he told Herron he did not think they had reached an agreement and that Herron responded that the matter would probably end up in court. At trial, Herron denied ever asking Eddie Allen whether St. John and his father had talked or reached an agreement.

■■ Viewing this conflicting testimony in the light most favorable to Appellee as we are required to do, it is evidence from which a jury could have concluded that Herron lied about coverage available under Appellee's policy and that Appellant actively concealed this coverage from Appellee. Any conflicts in the testimony

were for the jury to resolve. *Medlock v. Burden*, 321 Ark. 269, 900 S.W.2d 552 (1995). Likewise, it was for the jury to determine the credibility of these two witnesses and the remainder of the evidence. *Id.* On appeal, we simply determine if there is substantial evidence to support the jury's verdict. We conclude that Eddie Allen's testimony that Herron asked about Anthony Allen's residence, said he would check Appellee's policy for coverage, and then told him there was no coverage provides substantial evidence of an affirmative act made in a dishonest attempt to avoid liability under a policy. We also conclude that Appellant's dishonesty and active concealment of available coverage are substantiated further by Eddie Allen's testimony as to the second conversation between Herron and him. Accordingly, we cannot say the trial court erred in submitting this issue to the jury and denying Appellant's motion for a directed verdict.

### Claim for Outrage

Appellant's second point on appeal is that the trial court erred in submitting the issue of the tort of outrage to the jury based on insufficient evidence. We are procedurally barred from reaching the merits of this argument.

Our review on appeal is limited to the record as abstracted in the briefs. *Lakeview Country Club, Inc. v. Superior Prods.*, 325 Ark. 218, 926 S.W.2d 428 (1996). Here, the abstract does not reveal that the complaint alleged a cause of action for the tort of outrage. The abstract does state that, at the close of Appellee's case as plaintiff, in addition to moving for a directed verdict on the claim for bad faith Appellant also moved for a directed verdict on a claim for intentional infliction of emotional distress based on a lack of substantial evidence that Elisha Allen suffered severe emotional distress that a reasonable person could not be expected to endure. However, the abstract does not reveal that the trial court ever ruled on this particular motion. It was Appellant's burden to obtain a ruling on the motion, and the absence of the ruling constitutes a waiver of this issue on appeal. *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996). Given the absence of a ruling at this stage, Appellant's renewal at the close of all the evidence of his previous motion for directed verdict has no effect on preserving this issue for appellate review.

Appellant waived this issue further because, although the ab-

stract reveals that the jury was instructed on the definition of extreme and outrageous conduct, there is no indication in the abstract that Appellant objected to such an instruction. The absence of an objection to the outrage instruction distinguishes this case from *Dillard Dep't Stores, Inc.* v. *Adams*, 315 Ark. 303, 867 S.W.2d 442 (1993), where we stated that when an erroneous instruction has been given and a jury has rendered a general verdict from which prejudice due to the error cannot be ascertained, we must reverse unless some additional factor renders the erroneous instruction harmless.

On this record, we find no merit to Appellant's arguments. The judgment is affirmed.

Special Justices NOYL HOUSTON and ELDON F. COFFMAN, join in this opinion.

JESSON, C.J., and GLAZE, J., not participating.