# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3070

_____

| | |
|---|---|
| Larry Baker, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the Western |
| | *   District of Arkansas. |
| Safeco Insurance Company of America, | * |
| | * |
| Appellee. | * |

_____

Submitted:  February 8, 1999

Filed:   April 21, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Larry Baker owned a rental house in Fayetteville, Arkansas, that was insured by the Safeco Insurance Company.  When the house and its contents were damaged by fire, Mr. Baker and Safeco were unable to reach a settlement on the amounts due under the insurance policy, and Mr. Baker sued Safeco for bad faith and breach of contract. After the trial court[1] granted summary judgment in favor of Safeco on the bad-faith

_____

[1]The Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas.

claim, a jury awarded $22,400 to Mr. Baker on the contract claim. Mr. Baker appeals the trial court's grant of summary judgment on the bad-faith claim, and we affirm.

I.

To establish a claim for bad faith under Arkansas law, an insured must demonstrate that the insurance company engaged in affirmative conduct without a good-faith defense. *Aetna Casualty and Surety Co. v. Broadway Arms Corporation*, 664 S.W.2d 463, 465 (Ark. 1984). The insurance company's actions must be "dishonest, malicious, or oppressive in an attempt to avoid its liability under [the] insurance policy." *Id.* A bad-faith claim cannot be based upon an insurance company's denial of a claim, negligence, or bad judgment "so long as the insurer is acting in good faith." *Id.*

Mr. Baker contends that Safeco acted in bad faith when it sent a contractor to the rental house to survey the damage and to prepare a repair estimate. He maintains that Safeco knew that the contractor's estimate, approximately $50,000, was too low. (Mr. Baker obtained repair estimates from two other contractors of approximately $80,000 to $90,000). He further contends that Safeco used the "spurious" repair estimate in subsequent negotiations in an attempt to delay payment and to force him to settle his repair claim for a reduced amount.

We find no evidence in the record to support Mr. Baker's allegations. It is undisputed that the $50,000 estimate was based upon the damage to the house that was visible upon initial inspection, and Safeco maintained throughout the negotiations that it would consider making a supplemental payment for any hidden damage that was discovered during the repair. In addition, when Mr. Baker indicated that he wanted to hire one of the other contractors to do the repair work, a Safeco representative met with Mr. Baker and his preferred contractor and attempted to resolve the substantial differences in the repair estimates. The record clearly reveals that the delay in resolving Mr. Baker's repair claim was the result of a good-faith dispute between

Safeco and Mr. Baker over the cost of repairing the rental house. We therefore conclude that Safeco's conduct in handling Mr. Baker's claim for the cost of repair did not constitute bad faith. *See Stevenson v. Union Standard Insurance Co.*, 746 S.W.2d 39, 42 (Ark. 1988) (where good-faith dispute exists as to amount due under insurance policy, insurance company's mere refusal to pay disputed claim does not constitute bad faith).

## II.

Mr. Baker also argues that Safeco acted in bad faith because for seven months it "ignored" his claim for loss of rent in order to pressure him into settling the claim. We find this allegation to be wholly without merit. It is clear from the record that a good-faith dispute existed between Safeco and Mr. Baker regarding the fair rental value of the property and that Safeco attempted to resolve that dispute in a timely manner.

Mr. Baker contended throughout his negotiations with Safeco that the rental value of his property at the time of the fire was $1,800 per month. To substantiate his claim, Mr. Baker sent Safeco a lease agreement that he and his former tenant, Brian Heeney, had signed; the agreement specified a rental amount of $1,200 per month. The lease agreement was altered by a handwritten amendment at some point, however, to reflect that Mr. Heeney agreed to pay $1,800 per month. A Safeco claims adjuster then took a tape-recorded statement from Mr. Heeney, who stated that Mr. Baker had attempted to increase the rent to $1,800 per month but relented when Mr. Heeney protested that he could not afford to pay the higher figure. In his taped statement, Mr. Heeney said that he paid $1,200 per month in rent until he vacated the premises.

Safeco then asked Mr. Baker to provide documentation that his tenant had in fact paid $1,800 per month prior to the fire. Mr. Baker provided an affidavit from Mr. Heeney, who said in it (in contrast to his taped statement) that in fact he had agreed to the increase in rent and that he had made one rental payment of $1,800 in May or

-3-

June, 1996. Mr. Baker failed, however, to provide a canceled check or other documentation.

Given the confusion over the amount of rent actually paid on the property, and especially given the significant, undisputed difference between Mr. Heeney's initial statement to the claims adjuster and Mr. Heeney's affidavit, we think that Safeco acted reasonably in refusing to settle Mr. Baker's loss of rent claim at the higher figure of $1,800 per month and in insisting on additional documentation before compensating Mr. Baker for loss of rent. We conclude that there is no evidence whatsoever of bad faith on Safeco's part in its handling of Mr. Baker's claim for loss of rent.

III.

Mr. Baker maintains that Safeco acted in bad faith in its handling of certain items of furniture that were damaged by the fire. He contends that Safeco instructed a contractor to clean his damaged furniture without his consent in an attempt to apply pressure on him to settle the claim for the damaged furniture. He alleges, moreover, that Safeco acted in bad faith when it refused to compensate him for additional damage that allegedly occurred to the furniture while it was in the contractor's possession.

We find no merit in either of these claims. Even assuming that Safeco had the furniture cleaned without Mr. Baker's consent, the record does not support an inference that Safeco took this action maliciously or dishonestly in an attempt to avoid its liability under the insurance policy, much less in an attempt to apply pressure on Mr. Baker to settle his claim on the furniture. Safeco may have been negligent in allowing the furniture to be cleaned without Mr. Baker's consent, but mere negligence is not sufficient to support a claim for bad faith. *Broadway Arms Corporation*, 664 S.W.2d at 465.

As for the alleged damage to the furniture while it was in the contractor's possession, it is clear from the record that there was a genuine dispute as to the existence and extent of such damage throughout the negotiations between Safeco and

Mr. Baker. The record contains nothing that would allow a reasonable fact-finder to conclude that Safeco did not believe in good faith that it did not owe Mr. Baker an additional sum for this damage. Safeco's refusal to compensate Mr. Baker for the alleged damage to his furniture therefore cannot have constituted bad faith.

## IV.

Mr. Baker draws our attention to other parts of the record that, he alleges, demonstrate bad faith on the part of Safeco. After carefully reviewing the record, we conclude that these additional allegations are wholly without merit. We therefore affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.