## UNUM LIFE INSURANCE COMPANY of AMERICA *v.* Frances EDWARDS

04-468                                    210 S.W.3d 84

Supreme Court of Arkansas
Opinion delivered June 16, 2005

[Rehearing denied September 8, 2005.*]

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, for appellant.

*Tony L. Wilcox*; and *Orr, Scholtens, Willhite & Averitt, PLC*, by: *Chris A. Averitt*, for appellee.

BETTY C. DICKEY, Justice. Frances Edwards (Edwards) worked as a medical technologist at the University of Arkansas for Medical Sciences (UAMS) where she had disability

---

* IMBER, J., would grant rehearing. GLAZE, J., not participating.

insurance with Unum Life Insurance Company of America (Unum). In 1994, Edwards was struck by a car while riding her bicycle and sustained serious head injuries, but did not lose consciousness. Edwards spent one night in the hospital for observation and was released the following day. She returned to work afterwards, but experienced cognitive impairments both at work and at home. Edwards' ability to return to work was, according to medical-care professionals, due to the rote nature of the laboratory testing procedures her job involved and her vast experience in performing these procedures.

According to Edwards, changes in medical technology and continuing education requirements, as well as advances in hospital facilities and equipment, drastically changed her work environment. Because her condition did not improve, she was unable to adapt to these changes. As a result, her continuing memory and cognitive deficiencies caused her to make critical life care errors at work. After Edwards' employer noticed mistakes, her supervisor, Sue Scott, wrote to Edwards' neurologist, Dr. Lee Archer, to inquire about Edwards' continued ability to perform critical job functions. In March of 2000, Dr. Archer determined that Edwards could not continue to work due to the safety risk she posed to patients.

Edwards filed a disability claim with Unum, and on October 9, 2000, she received a letter from Unum indicating that they would initiate payment on her claim, but that it had not made a final determination of her eligibility. In January 2001, Unum denied her claim, indicating that her condition should not prevent Edwards from performing her occupational duties. Unum's letter falsely stated that Edwards had been working in a lab that closed in February of 2000, and Unum also later admitted that the letter used a definition of disability different from the one contained in Edwards' policy.

Edwards appealed Unum's decision to deny her claim, and provided Unum with her medical and employee records, including Dr. Archer's. On June 7, 2001, Unum issued a final denial of her claim, declaring that Edwards had exhausted all administrative remedies, and no additional information would be reviewed. Unum determined that her bicycle accident did not cause a decrease in physical or cognitive function sufficient to quit her job and that she was still capable of performing her job duties; therefore, she did not meet the policy's definition of "disabled."

Unum erroneously identified Edwards as a Laboratory Technician although she was a Certified Technologist II, and claimed they had forwarded Edwards' medical records to two

in-house medical professionals for review when, in fact, Unum sent only portions of the records to three physicians, and omitted entirely the results of one of those reviews.

Edwards sued Unum in Pulaski County Circuit Court, seeking benefits under her disability policy, alleging that Unum breached the insurance contract and committed the tort of bad faith. Edwards did not specify the amount that she claimed was due under the insurance contract.

Before trial, Unum moved for partial summary judgment on the tort of bad faith, and at a hearing on June 3, 2003, the trial court withheld its ruling on the motion, pending depositions scheduled for June 20 and 23, 2003. On August 15, 2003, four days before trial, Edwards supplemented her response to the motion for partial summary judgment. On the morning of trial, the court denied Unum's motion for partial summary judgment. Unum then moved to strike Edwards' supplemental response as untimely, and because it raised a new theory of bad faith for which Unum had not had the opportunity to develop a defense. Unum also moved for a continuance or, alternatively, to bifurcate the bad faith claim. The trial court denied all motions.

Unum also filed a pretrial motion *in limine* to preclude any reference to Edwards' medical conditions and symptoms arising after the date of denial of her disability benefits. Edwards had been diagnosed with rheumatoid arthritis. The trial court granted the motion, but later a witness, Jack Tyler, Edwards' roommate and advisor, told the jury that Edwards' physical problems resulted from the denial of her insurance claim. This testimony contradicted his deposition, in which he testified that arthritis, not the insurance denial, caused Edwards' physical condition. Unum moved for mistrial, and the trial court, after taking the matter under advisement, denied the motion.

When the plaintiff rested, and again at the conclusion of its case, Unum moved for directed verdict on the bad faith claim. The trial court denied both motions. The jury found that: Edwards was disabled; Unum breached its contract with Edwards; and, she was entitled to $43,943 in benefits as a result of Unum's breach, a finding which is not being challenged in this appeal. Because Edwards had not specified the amount due under the contract, Unum objected to any award of penalty or attorney's fees, saying that she failed to recover within 20% of the amount sought as required by Ark. Code Ann. § 23-79-208 (Repl. 2001). The trial

court granted Edwards' motion for statutory penalty and attorney's fees. The jury also awarded her $225,000 in compensatory damages on her bad faith claim.

Unum raises four points on appeal, arguing that the trial court should have: directed a verdict on the tort claim for bad faith; bifurcated or continued the trial after Edwards, the day before trial, supplemented the summary judgment record regarding the bad faith claim; declared a mistrial following prejudicial testimony by one of Edwards' witnesses, which was intentionally volunteered in violation of a court order; and, not awarded penalty and attorney's fees.

In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Id.; Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). In determining whether substantial evidence exists, we have stated that we will rely upon two crucial principles to avoid invading the province of the jury. *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993). First, the court will consider only the evidence favorable to the successful party below, and second, the court will defer to the jury's resolution of the issue unless we can say that there is no reasonable probability to support the version of the successful party below. *Id.* Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Howard v. Hicks*, 304 Ark. 112, 800 S.W.2d 706 (1990).

Unum argues that the jury's verdict on bad faith is not supported by substantial evidence, and that Edwards submitted no evidence that Unum acted in bad faith. The standard for establishing a claim for bad faith is rigorous and difficult to satisfy. *Delta Rice Mill, Inc. v. General Foods Corp.*, 763 F.2d 1001 (8th Cir. 1985). In order to state a claim for bad faith, one must allege that the defendant insurance company engaged in affirmative misconduct that was dishonest, malicious, or oppressive. *State Auto Prop & Cas.*

*Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999); *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.,* 281 Ark. 128, 664 S.W.2d 463 (1983). This court has defined "bad faith" as "dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Swaim, supra.*

In *State Auto Prop & Cas. Ins. Co. v. Swaim,* Swaim brought a claim of bad faith under a homeowner insurance policy after a tornado had damaged his home. The insurance company paid approximately $40,000; however, two weeks later Swaim discovered more damage and made another request for money under the policy. The insurance company denied the claim based on the assessment that the damaged items were not available for inspection even though its own adjusters had advised Swaim to dispose of the items. This court held that mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *Swaim, supra; Stevenson v. Union Std. Ins. Co.,* 294 Ark. 651, 746 S.W.2d 39 (1988). The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct. *Id.* This court wrote:

> But turning to the merits, this court has held on several occasions that a mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith. For example, we have held that nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith. Nor did the fact that an insurance company waited three months to investigate a claim.
>
> Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk.

(Internal citations omitted). *Swaim,* 338 Ark. at 58.

This court held that the *Swaim* trial court erred in refusing to direct a verdict and reversed and dismissed the judgment as it related to bad faith. In *Findley v. Time Insurance Company,* 264 Ark. 647, 573 S.W.2d 39 (1978), the plaintiff alleged that an insurance company failed to explain its reasons for refusal to honor claims and that the company failed to investigate the claims. This court wrote:

[The complaint] merely allege[s] that the defendant has failed to explain, failed to investigate, and failed to contact the plaintiff or her physician. Such inaction does not give rise to a cause of action in tort. Prosser has pointed out that an action in tort cannot ordinarily be based upon a breach of contract which amounts to mere nonfeasance, which means not doing the thing at all, as distinguished from misfeasance, which means doing it improperly. "Much scorn has been poured on the distinction, but it does draw a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort." Prosser, Torts, 92 (4th ed., 1971). We recently applied that very distinction, citing Prosser, in *Morrow v. First Nat. Bank of Hot Springs*, 261 Ark. 568, 550 S.W.2d 429 (1977).

Here, the trial court relied on *Columbia National Insurance Co. v. Freeman*, 347 Ark. 423, 64 S.W.3d 720 (2002), and found that there was a question of whether ample evidence or documentation was provided to Unum. In *Columbia National*, an insurance company failed to pay ongoing business expenses following a fire. The insurance adjuster testified that he asked the insureds to provide certain documentation. The insureds testified that they sent the requested documentation to the adjuster. The adjuster stated that he only received a handwritten list, which he determined was inadequate. Even though the company's liability to pay ongoing business expenses was not disputed, the trial court found questionable acts that warranted a jury decision on the issue of bad faith: whether the insurance company received appropriate documentation to pay continuing business expenses; whether the company intentionally failed to provide the insured with a temporary location for their business; whether the insurance company acted in bad faith when it failed to comply with an agreement reached between the parties on the issue of cost for building repairs; whether the insurance company altered the insured's claim files and documents by purposely misplacing documents relating to the insured's claim and by setting up a "dummy" claim file; whether a letter sent to the insured stating that they had complicated things by hiring a lawyer constituted bad faith; and, whether the insured were acting uncooperative with the company. This court affirmed the trial court's denial of a directed verdict in light of this evidence supporting bad faith. *Id.*

Unum distinguishes this case from *Columbia National* by stating it did not deny Edwards' claim for failure to provide

requested documentation. Rather, Unum determined that the documentation submitted did not prove that Edwards was disabled under the policy. Here, Edwards' "right to recover any benefits under the policy was not established from all the information available. Every medical record was obtained and reviewed by Unum and its consultants." We agree with Unum that the evidence does not support a verdict of bad faith. Therefore, we reverse and dismiss the verdict of bad faith.

Edwards' disability claim was denied after Unum's medical consultant, psychologist Dr. Alan Cusher, reviewed the medical record and provided his opinion to the claims' adjuster, Shelton, who denied Edwards' claim. Edwards has not identified a malicious act independent of the actual claim denial. After years of testing, the treating physicians could not determine why her memory and ability did not improve. Edwards' disability policy required proof of disability. Benefits are provided only "when the company receives proof. It is the insured's responsibility to submit that proof and at the insured's expense." Unum's decision to deny her claim was based on that policy language, and it had no duty to further investigate her claim.

While Edwards argues that sufficient evidence supported the jury finding of bad faith, she offered no evidence that Unum engaged in any such affirmative acts of bad faith. The nature of the evidence Edwards presented at trial reveals the essence of her claim to be that *the denial itself* was wrongful. Unum denied the claim after Dr. Cusher, one of Unum's consulting physicians, reviewed Edwards' medical records. Dr. Cusher testified that he could not accurately evaluate her case without more medical information. His review no doubt influenced the decision to deny Edwards' claim, but Unum's reliance on his findings cannot reasonably be construed as affirmative bad-faith conduct.

Because we reverse and dismiss on the issue of bad faith, we need not address the issues of whether the trial court erred in refusing to bifurcate or continue the trial, or whether the trial court should have declared a mistrial. However, because the jury found that Unum breached its contract with Edwards, that she was entitled to $43,943 in benefits as a result of that breach, and that finding was not challenged on appeal, this court addresses whether the trial court erred in awarding penalty and attorney's fees.

Unum argues that Edwards failed to meet the statutory requirements to merit an additional award of attorney's fees.

Edwards' initial complaint sought insurance benefits in excess of $3,000 and punitive damages for the tort of bad faith. The amended complaint made the same allegation. The jury's verdict awarded Edwards insurance contract benefits in the amount of $43,943, which the court reduced to $12,034 due to contractual offsets. Edwards sought attorney's fees pursuant to Ark. Code Ann. § 23-79-208, which provides in part:

> (a)(1) In all cases in which loss occurs . . . the insurance company . . . liable therefor shall fail to pay the losses . . . [the insurance company] shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

In *National Standard Insurance Co. v. Westbrook,* 331 Ark. 445, 962 S.W.2d 355 (1998), the insured sought in its complaint to recover $78,908, and the jury returned with a verdict of $62,750. The trial court awarded attorney's fees and a 12% penalty, which was reversed on appeal. This court wrote:

> The problem with both of appellee's theories is that he never amended his complaint to reflect the true amount he claimed was due him. Not only did he fail to amend his complaint, he submitted to the jury the amount he demanded in his initial complaint — $79,908.89 — by way of his "Sworn Statement in Proof of Loss." While appellee could have made a new and lesser demand by amendment after he filed his suit, *see R. J. "Bob" Jones Excavating Contr., Inc.* v. *Firemen's Ins. Co.,* 324 Ark. 282, 920 S.W.2d 483 (1996), he did not do so. See also Ark. R. Civ. P. 15 (allowing for the liberal amendment to pleadings when no prejudice to the parties would result). Significantly, there was no evidence before the jury that would allow it to consider that the rental payments had been made. Appellee contended that his dwelling was a total loss, but the jury disagreed, returning a verdict that was outside the twenty percent of the amount appellee demanded in the proof he presented.

▪ Edwards did not amend the complaint to definitely state the amount of benefits claimed. However, Edwards sought all future benefits due her under the policy. It was undisputed that, if successful on her claim, Edwards was entitled to her gross monthly benefit of $2,197.15 for a period of twenty-five months, four months of which had been previously paid by Unum.

Therefore, unless Unum establishes an applicable exception, Edwards is entitled to such fees. Unum argues the exception set out in Ark. Code Ann. § 23-79-208(d) applies. That subsection states:

> (d) Recovery of less than the amount demanded by the person entitled to recover under the policy shall not defeat the right to the twelve percent (12%) damages and attorney's fees provided for in this section if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which is sought in the suit.

However, this court has held that an award is proper under § 23-79-208 even though no specific amount is set forth in the complaint. *Newcourt Financial, Inc. v. Canal Insurance Co.*, 341 Ark. 181, 15 S.W.3d 328 (2000). Furthermore, this court has held that the fact the amount of benefits may be ultimately subject to offsets does not preclude recovery under the statute. *Farm Bureau Mutual Insurance Co. of Arkansas v. Foote*, 341 Ark. 105, 13 S.W.3d 512 (2002). Therefore, the trial court's judgment awarding penalty and attorney's fees is affirmed.

Affirmed in part; reversed and dismissed in part.

IMBER, J., dissents in part.

GLAZE, J., not participating.

ANNABELLE CLINTON IMBER, Justice, dissenting. Bad faith means "conduct that is dishonest, oppressive, or malicious." AMI Civil 2004, 405. An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *State Auto Property & Casualty Ins. Co. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999). The majority concludes that there is insufficient evidence to support the jury's verdict of bad faith. I must respectfully disagree. Upon considering only the evidence favorable to Edwards and with deference to the jury's resolution of the issues unless there is no reasonable probability to support the version advocated by Edwards, I believe that there is substantial evidence to support the jury's verdict, especially in light of our recent decision in *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 64 S.W.3d 720 (2002).

In *Columbia Nat'l Ins. Co. v. Freeman, supra,* we were asked to determine whether the circuit court properly denied the insurance company's motion for directed verdict. In that case, a fire caused

major damage to a store owned and operated by the appellees, Gary and Peggy Freeman. The appellees were insured against losses to the building, its contents, and continuing business expenses by appellant Columbia National Insurance Company. When the appellant failed to pay continuing business expenses and provide a temporary office facility, the appellees filed a complaint alleging, among other things, the tort of bad faith. At trial, the court determined that there was sufficient evidence of bad faith to submit the issue to the jury. The jury returned a verdict in favor of the appellees. On appeal, we analyzed all the circumstances that formed the basis of the appellees' claim of bad faith: (1) appellant acted in bad faith when it failed to pay appellees' ongoing business expenses; (2) appellant acted in bad faith when it failed to provide a temporary location for their business; (3) appellant acted in bad faith when it failed to comply with an agreement reached for the cost of building repairs; (4) appellant acted in bad faith when it altered the appellees' claim file; (5) appellant acted in bad faith when it falsely accused appellees of being uncooperative; and (6) appellant acted in bad faith when it paid the lower of two appraisals. In affirming the trial court's denial of appellant's motion for a directed verdict, we concluded that each of these circumstances constituted substantial evidence to support the jury's verdict that appellant's actions were "oppressive conduct carried out with a state of mind characterized by ill will." *Columbia Nat'l Ins. Co. v. Freeman,* 347 Ark. at 431, 64 S.W.3d at 725.

Prior to this court's decision in *Columbia Nat'l Ins. Co. v. Freeman,* our case law affirming judgments for bad faith had addressed circumstances where the conduct on its face was dishonest, malicious, or oppressive. For example, in *Southern Farm Bureau Cas. Ins. Co. v. Allen,* 326 Ark. 1023, 934 S.W.2d 527 (1996), the insurance company lied when it stated there was no insurance coverage. Similarly, in *Viking Ins. Co v. Jester,* 310 Ark. 317, 836 S.W.2d 371 (1992), there was evidence of aggressive, abusive, and coercive conduct by the claims representatives. In *Employers Equitable Life Ins. Co. v. Williams,* 282 Ark. 29, 665 S.W.2d 873 (1984), the carrier intentionally altered insurance records. In all of these cases, proof of the act itself constituted substantial evidence of bad faith. Arguably, until *Columbia Nat'l Ins. Co. v. Freeman, supra,* the test for determining the merits of a directed-verdict motion was whether the alleged misconduct itself manifested dishonesty, malice, or oppressiveness. Accordingly, we have reversed a jury's verdict for bad faith when the testimony only established that the insurance company was giving the insured the "run around" and

taking a long time to make payment. *See State Auto Property & Casualty Ins. Co. v. Swaim, supra.* Under *Columbia Nat'l Ins. Co. v. Freeman, supra,* this court merely recognized that a claim for bad faith can survive a directed-verdict motion even when the conduct on its face is not dishonest, malicious, or oppressive. To illustrate, in *Columbia Nat'l Ins. Co. v. Freeman, supra,* the act of declining to pay ongoing business expenses based on inadequate documentation was not in and of itself misconduct. Yet, we concluded that the issue of whether the insurance company had in fact received adequate documentation was for the fact finder to resolve based on the credibility of the witnesses. *Id.*

In this case, Unum made the following admissions:

• It erroneously identified Edwards as a Laboratory Technician although she was in fact a Certified Technologist II;

• It erroneously concluded that Edwards worked two jobs following her injury;

• It used an inapplicable definition of disability in the denial letter; and

• It claimed to have forwarded Edwards's medical records to two in-house medical professionals for review when, in fact, Unum sent only portions of the records to three physicians, and omitted entirely the results of one of those reviews. The following statement is located within Dr. Alan Cusher's internal memo, dated November 2, 2000: "I would like to point out that I did not review the entire file as your note suggests but only selected documents that were forwarded to me." This evidence indicating that the insurance company was "cherry picking" Edwards's medical records to send to its experts could be considered by the jury in determining whether Unum's actions were the result of "ill will."

Moreover, the jury's verdict of bad faith is supported by the insurance company's denial letter and its physicians' memos regarding Edwards's diagnosis. Specifically, the denial letter affirmatively stated that Edwards's cognitive impairments were unrelated to her 1994 bicycle accident. The following excerpts from the denial letter illustrate this point:

> Our mental health clinician stated that it is illogical for an individual to sustain a progressive disease in cognitive functioning after experiencing a mild head injury. He further opined that individuals who experience mild head injuries are expected to fully recover

within months of the incident. Thus, *the bicycle accident,* in our opinion, *cannot be shown to cause a decrease in function necessitating leaving work.* . . . Therefore, we cannot establish that a decrease in cognitive functioning caused your inability to work. . . . *[W]e feel that you are capable of performing your former occupational duties* as a significant change in your cognition as a result of the bicycle accident, or a change in condition that occurred prior to your cessation of work in 2000 that would cause an inability to work.

(emphasis added). Unum's position was that Edwards's cognitive injuries were not caused by the 1994 accident. However, when Edwards's medical records were reviewed by medical experts, including Unum's own experts, they concluded that more information would be needed in order to make a diagnosis regarding whether her cognitive injuries were caused by the 1994 accident. In fact, the only consistent opinion expressed by Unum's experts was that the medical records were insufficient to make a conclusion. Specifically, Drs. Milton Jay and Alan Cusher recognized that Edwards had cognitive complaints prior to the accident. Yet, because they were unsatisfied with the amount of testing, they were unable to decide whether her prior cognitive condition was aggravated by the 1994 accident.

The majority mistakenly concludes that the essence of Edwards's bad faith claim is that *the denial itself* is wrongful. Yet, it is in the insurance company's denial letter that there are affirmative acts of misconduct. The denial letter states affirmatively that Edwards's cognitive impairments cannot be related to her bike accident. In contrast, the insurance company's own medical experts declined to make such a conclusive diagnosis. Instead, they concluded that more information would be needed to determine whether Edwards's cognitive impairments were related to the bike accident. Thus, evidence that Unum altered the medical opinions of its experts in the denial letter is substantial evidence that clearly supports the jury's verdict of bad faith.

On appellate review we consider only the evidence favorable to the successful party below and we defer to the jury's resolution of the issues unless we can say that there is no reasonable probability to support the version of the successful party below. *Wheeler Motor Co. v. Roth,* 315 Ark. 318, 867 S.W.2d 446 (1993). Under this standard of review, there is substantial evidence to support the jury's verdict. Thus, the jury's award of damages on bad faith should be affirmed.