# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1333

_____

Alexandra Sims

*Plaintiff - Appellant*

v.

State Farm Mutual Automobile Insurance Company

*Defendant - Appellee*

------------------------------

United Policyholders

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 9, 2018
Filed: July 3, 2018

_____

Before LOKEN, BEAM, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Alexandra Sims sued her insurance carrier, State Farm Mutual Automobile Insurance Company (State Farm), for the tort of bad faith, violation of the Arkansas Deceptive Trade Practices Act (ADTPA), and for damages on an underinsured motorist coverage claim. She appeals the district court's[1] grant of summary judgment to State Farm on the bad faith claim, and an evidentiary ruling on the underinsured motorist coverage claim.

I.

In 2008, while a senior in high school, Sims was involved in a two-vehicle crash. Her car was rear-ended by an underinsured 16-year-old who was texting while driving. Sims suffered numerous soft-tissue injuries as a result of the crash. Sims sued the underinsured driver and he settled for $50,000, which was the limit of his insurance coverage. Sims filed a claim for her remaining damages under her own underinsured motorist policy, provided by State Farm, seeking the policy limit of $100,000. She submitted past medical expenses of about $21,000, and expert reports that predicted future medical costs and economic losses that well exceeded the policy maximum. She also attached medical records documenting her injuries.

State Farm assigned the claim to claims adjuster Dean Ripley. Ripley sought the assistance of a State Farm medical professional to help assess the medical records Sims had provided. This review indicated that Sims had received treatment for "soft tissue" injuries for longer than the typical six-week period. Ripley, in consultation with claims supervisor Oscar Rodriguez, sought clarification from Sims's treating chiropractor. The chiropractor explained that Sims suffered from torn ligaments, an injury that could not be expected to heal in six weeks, could not be repaired by surgery, and was likely permanent. After receiving this information, Ripley

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

suggested that State Farm might want to ask for an independent evaluation of Sims's injuries, but Rodriguez asked Ripley to prepare an offer of settlement based on the information he already had.

Ripley estimated that, after deducting the $50,000 Sims had already received from the underinsured driver, Sims's damages were between $66,297.12 and $101,297.12. He provided his calculations to Rodriguez and asked for authority to settle Sims's claim for up to $99,786.72. Rodriguez replied that most of Sims's medical expenses were from 2008 and it was unclear from the records whether she was still receiving treatment. In his view, "a sympathetic jury would value this claim at [$]100,000 at most," and he authorized Ripley to settle for a maximum of $50,000 (the estimated value of the claim minus the $50,000 from the underinsured driver).

Ripley first offered Sims $25,000, which she swiftly rejected. Ripley told Sims that the offer was based on available information and suggested that she provide any additional information she had to support her claim. Sims did so, and Ripley increased the offer to $35,000. Sims rejected the revised offer, reiterating her claim for the policy maximum of $100,000. When that sum was not forthcoming, Sims filed this lawsuit. State Farm paid Sims $25,000 for undisputed medical expenses after the suit was filed.

State Farm sought summary judgment on Sims's bad faith and ADTPA claims, which the district court granted. As to the bad faith claim, the court found that Sims "has not shown that State Farm has committed any affirmative act of dishonesty, oppression, or malice" as required by Arkansas law. Sims does not contest the district court's ADTPA ruling on appeal.

The case proceeded to trial on the underinsured motorist claim. Although pled as a breach of contract, the district court submitted Sims's claim to the jury as a claim

for underinsured motorist coverage.[2]  At trial, Sims sought to introduce evidence that State Farm's corporate policies incentivized claims adjusters (like Ripley) and claims supervisors (like Rodriguez) to deny claims regardless of their merit.  The district court excluded this evidence as irrelevant and likely to confuse the issues.

After trial, the jury returned a $75,000 verdict for Sims.  Because Sims had already recovered that sum from the underinsured driver ($50,000) and State Farm ($25,000), judgment was entered for State Farm.  This appeal followed.

## II.

## A.

We begin with Sims's assertion that the district court erred in granting State Farm summary judgment on her bad faith claim.  We review the grant of summary judgment de novo.  Bell v. Allstate Life Ins. Co., 160 F.3d 452, 455 (8th Cir. 1998).  Summary judgment is only appropriate when, viewing the record in the light most favorable to the nonmovant, there are no genuine issues of material fact left for the jury.  Id.; see also Fed. R. Civ. P. 56(a).

---

[2]Arkansas law requires motor vehicle insurers to provide underinsured motorist coverage unless the insured rejects it in writing.  See Ark. Code Ann. § 23-89-209(a).  To recover on a claim of underinsured motorist coverage, an accident victim must prove, with some exceptions, (1) that she sustained damages, (2) that the underinsured motorist was negligent, (3) that the underinsured motorists' negligence was the proximate cause of her damages, (4) that she carried underinsured motorist coverage from the defendant on the date of the accident, and (5) that the underinsured motorist's insurance was insufficient to fully pay for her damages.  See Ark. Model Jury Instruction 2303; see also Pogue v. Transcon. Ins. Co., 2010 Ark. 222, at *7 (finding that Model Instruction 2303 properly stated Arkansas law).

Sims's bad faith claim is governed by Arkansas substantive law. See Washington v. Countrywide Home Loans, Inc., 655 F.3d 869, 873 (8th Cir. 2011). The Arkansas Supreme Court has explained:

> [I]n order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type [of] claim be based upon negligence or bad judgment so long as the insurer is acting in good faith.

Aetna Cas. & Sur. Co. v. Broadway Arms Corp., 664 S.W.2d 463, 465 (Ark. 1984). This standard "is rigorous and difficult to satisfy." Unum Life Ins. Co. of Am. v. Edwards, 210 S.W.3d 84, 87 (Ark. 2005). The "dishonest, malicious, or oppressive" acts must be "carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." Id. (quoting State Auto Prop. & Cas. Ins. Co. v. Swaim, 991 S.W.2d 555, 559 (Ark. 1999)). Therefore, even when the insurance company is guilty of "negligence, gross ignorance, or a complete failure to investigate a claim," the tort of bad faith is unavailable. S. Farm Bureau Cas. Ins. Co. v. Allen, 934 S.W.2d 527, 529 (Ark. 1996).

Sims argues that the district court applied the wrong legal standard and failed to recognize a genuine dispute of material fact.

As to the legal standard, Sims contends that the district court only analyzed whether State Farm's conduct was malicious, and failed to consider the two alternatives joined to the word "malicious" by the disjunctive "or." See Aetna, 664 S.W.2d at 465 ("[T]he misconduct must be dishonest, malicious, *or* oppressive . . . ." (emphasis added)). We disagree. Sims's argument takes one sentence from the

district court's order out of context: "Sims has not identified a malicious act independent of the actual decision to deny her claim for the policy limits." The rest of the order makes clear that the court evaluated the record for dishonest, malicious, or oppressive conduct.

As to the facts, Sims argues that there is a genuine dispute on the question of whether State Farm's conduct met the bad faith standard. At its core, her contention is that State Farm should have conducted a more thorough investigation of her damages and should have given greater credence to the expert evidence she submitted. Even if Ripley and Rodriguez *should* have done a more thorough investigation and *should* have given greater weight to the opinions of Sims's experts, Sims's allegations show only negligence and fall short of dishonest, malicious, or oppressive conduct as a matter of law. See Allen, 934 S.W.2d at 529; cf. Cincinnati Life Ins. Co. v. Mickles, 148 S.W.3d 768, 778 (Ark. Ct. App. 2004) (affirming a jury's finding of bad faith when the insurer "made a decision to *ignore evidence* obtained in an investigation that pointed to the applicant's truthfulness and cast doubt on the idea that she had made any misrepresentations" (emphasis added)).

Sims also asserts that Rodriguez's erroneous determination that most of Sims's medical expenses were incurred in 2008 was dishonest. But Sims produced no evidence to show that Rodriguez's assessment was anything more than mistake or bad judgment. Under Arkansas law, bad judgment is insufficient, without more, to support a claim of bad faith. See Aetna, 664 S.W.2d at 465. And there is no evidence from which a jury could infer that Rodriguez acted with a state of mind characterized by "hatred, ill will, or a spirit of revenge."

Finally, Sims claims that Ripley and Rodriguez ran afoul of State Farm's own claims manual by failing "to give [her] the benefit of the doubt" when evaluating her claim. Even if we assume Ripley and Rodriguez violated State Farm's procedures, Arkansas law still requires evidence that amounted to bad faith. Again, we find that

Sims produced insufficient evidence from which a jury could infer the requisite state of mind.

Viewing the record as a whole, we conclude that "[t]he nature of the evidence [Sims] presented . . . reveals the essence of her claim to be that the *denial itself* was wrongful," which, under Arkansas law, is not enough to make out a claim for the tort of bad faith. Unum, 210 S.W.3d at 89. The district court did not err in granting judgment to State Farm on this claim.

B.

We turn next to Sims's argument that her trial was tainted by an evidentiary error. We review for a clear abuse of discretion. Olson v. Ford Motor Co., 481 F.3d 619, 623 (8th Cir. 2007). "The reason for this extremely deferential standard of review is obvious: [an evidentiary] ruling . . . depends on factors that are uniquely accessible to the trial judge who is present in the courtroom . . . ." Id.

Sims wanted to introduce evidence that she said would show State Farm had a practice of denying all claims, even those they were contractually bound to pay. It is not entirely clear under what theory Sims sought to introduce this evidence. Her briefs suggest this "institutional practice" evidence was relevant to a claim that State Farm had breached the implied covenant of good faith and fair dealing. But Sims's last remaining claim for damages was not tried as a breach of contract. Instead, the district court submitted it as an underinsured motorist coverage claim, and Sims makes no affirmative argument that the court erred in doing so.

Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, it may still

be excluded "if its probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

The first—and, in this case, final—step in our inquiry is whether the evidence Sims wanted admitted was "of consequence in determining the action." To recover, Sims only had to demonstrate the amount of damages that were proximately caused when the underinsured driver rear-ended her car; the other elements of Sims's underinsured motorist coverage claim were undisputed. See Ark. Model Jury Instruction 2303. If Sims's damages exceeded the $75,000 she had already recovered, she would receive the balance from State Farm. State Farm's allegedly obstructive institutional practices had no bearing on the amount of damages proximately caused by the car crash. And even if the "institutional practice" evidence had any probative value on that point, we agree with the district court that it was substantially outweighed by a danger of confusing the issues and distracting the jury from the task at hand. The district court did not abuse its discretion.

III.

The judgment of the district court is affirmed.

_____